UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACKLICK HOTSPOT, CORP., ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> MANSFIELD OIL COMPANY OF ) <br> GAINESVILLE, INC.; and EMPIRE ) <br> PETROLEUM PARTNERS, LLC, ) <br> ) <br> *Defendants*. ) | Civil Action No. 2:21-cv-00138-LPL |

**DEFENDANT EMPIRE PETROLEUM PARTNERS, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE**

Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 12(b)(6) and 28 U.S.C. § 1404, Defendant Empire Petroleum Partners, LLC ("Empire") hereby file this Memorandum in Support of their Motion to Dismiss or, Alternatively, to Transfer Venue.

**INTRODUCTION**

On February 1, 2012, Plaintiff, Blacklick Hotspot, Corp. ("Plaintiff" or "Blacklick") entered into a Retail Marketing Agreement and Special Purpose Lease with Defendant Mansfield Oil Company of Gainesville, Inc. ("Mansfield") (the Retail Marketing Agreement and Special Purpose Lease are referred to herein collectively as the "Agreements"). ECF No. 1 ("Compl.") ¶ 7. Each Agreement contained a mandatory forum selection clause which required any dispute to be resolved in the courts of Hall County, Georgia, and established the law of Georgia as governing all disputes. Compl. Ex. B ¶¶ 41-42 & Ex. C ¶¶ 24-25.

Two years after the execution of the Agreements, Mansfield sold its retail dealer operations to Empire. Compl. ¶ 14. The Complaint does not allege that Empire is a party to the Agreements,

1

nor is there any allegation that Empire participated in the negotiations leading up to the execution of the Agreements.

According to the Complaint, no progress had been made on the installation of Mansfield's petroleum dispensing equipment as of January 2016. Compl. ¶¶ 19-20. Blacklick contends that "Empire failed to and refused to provide Blacklick with the financing and petroleum productions and failed to install, maintain and operate the necessary fuel dispensing equipment required to operate the contemplated convenience store and gas station." Compl. ¶ 22.

Regardless of when the first breach occurred, Plaintiff contends that the Agreements were ultimately and finally breached when Empire "declared that the venture between Empire and Blacklick was no longer economically feasible." Compl. ¶ 25. This declaration, which Plaintiff contends breached the agreement, occurred on June 29, 2016. Compl. Ex. H. Plaintiff then initiated this action on August 11, 2020 by filing a writ of summons against Defendants in the Court of Common Pleas of Indiana County, Pennsylvania. The Case was subsequently removed to this Court.

## ARGUMENT

### I. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court does not opine whether plaintiffs are likely to prevail on the merits; rather, the court accepts as true all well-pleaded factual allegations and views them in a light most favorable to plaintiffs. *U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While plaintiffs need not set forth detailed factual allegations in their amended complaint to survive a defendant's Rule 12(b)(6) motion to dismiss, they must provide more than mere labels

and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). To test the sufficiency of the complaint, the court conducts a three-step inquiry. *See Santiago v. Warminster Township*, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must take note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions should be disregarded. *Id.* at 131-32; *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." *Iqbal,* 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a plaintiff fails to plead a "plausible claim for relief" the complaint, or the attachments thereto, admits to some fact that will necessarily defeat the claim, including any facts establishing an affirmative defense which appears on the fact of a complaint. *See Morrison v. Chatham Univ.*, Civil Action No. 16-476, 2016 U.S. Dist. LEXIS 121227, at *12 (W.D. Pa. Sep. 8, 2016).

## II. THE CASE SHOULD BE DISMISSED FOR IMPROPER FORUM

The Agreements at issue in this case provide for exclusive forum in Hall County, Georgia and mandate that all claims arising from the contract are governed by Georgia law. *See* Compl., Exhibit B ¶ 42; Exhibit C ¶ 25. Each forum selection clause is valid under either Pennsylvania or Georgia law. *See Central Contracting Co. v. C.E. Youngdahl & Co.,* 209 A.2d 810, 816 (Pa. 1965); *Row Equip., Inc. v. Norfolk S. Ry. Co.*, No. A20A0679, 2020 WL 2984868, at *1 (Ga. Ct. App. June 4, 2020) (finding forum selection clauses *are prima facie* valid and should be enforced unless opposing party shows that enforcement would be unreasonable under the circumstances).

In circumstances, such as this one, where a Plaintiff ignores a forum selection clause "dismissal under Rule 12(b)(6) is a permissible means of enforcing a forum selection clause. *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001)). Indeed, "when a forum selection clause specifies only a non-federal forum as the appropriate venue, transfer of the claim under 28 U.S.C. §§ 1404 or 1406 is unavailable, *dismissal is the only appropriate remedy*, and Rule 12(b)(6) provides a proper mechanism for effectuating such a dismissal." *MTR Gaming Grp., Inc. v. Arneault*, 899 F. Supp. 2d 367, 373–74 (W.D. Pa. 2012) (emphasis added).

The Agreements here explicitly provide for disputes to be resolved exclusively in Hall County, Georgia and Plaintiff submitted to the jurisdiction of the State and Superior Courts of Hall County, Georgia. This matter is subject to dismissal under Rule 12(b)(6).

Alternatively, this matter should be dismissed for improper venue under Rule 12(b)(3). Indeed, this Court has previously found that "[w]hen a valid forum selection clause designates another court as the exclusive venue for litigation, dismissal of the action under Rule 12(b)(3) is proper." *Armstrong Telecomms., Inc. v. CHR Sols., Inc.,* No. 18-787, 2019 U.S. Dist. LEXIS

132733, at *14 (W.D. Pa. Aug. 7, 2019). Dismissal of this case is proper, as Plaintiff has consented to exclusive jurisdiction in the courts of Hall County Georgia.

### III. ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION TO GEORGIA

In addition to Rule 12, Section 1404(a) allows the Court to transfer venue in order to honor a forum selection clause. *See Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 59 (2013) ("Section 1404(a) ... provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district."). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

In a § 1404 analysis, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 880 (3d Cir. 1995). As such, courts routinely transfer cases to the forum which the Parties contractually agreed to hear their disputes. As this Court has previously stated, "the presence of a contractual forum selection clause is a significant, but not dispositive, factor that figures centrally in the district court's calculus." *Vangura Kitchen Tops, Inc. v. C&C N. Am., Inc.*, No. 08cv1011, 2008 U.S. Dist. LEXIS 79360, at *31 (W.D. Pa. Oct. 7, 2008).

While a § 1404(a) motion to transfer venue is generally evaluated under a twelve-factor balancing test, the Supreme Court identified three ways in which the analysis changes when a forum-selection clause exists. *Atlantic Marine*, 571 U.S at 62–63. First, no weight is given to the plaintiff's general right to choose the forum in which it litigates its case. *Id*. at 63. Instead, "a proper application of §1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 60. "When parties agree to a forum-selection clause,

5

they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id*. at 64.

As the Supreme Court held, "when a plaintiff agrees by contract to bring suit only in a specified forum—presumably for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id.* Plaintiff exercised its venue privilege when it agreed to the exclusive forum and jurisdiction of Hall County Georgia. As such, the Court should transfer this case, should it not dismiss it entirely.

### IV. PLAINTIFF'S BREACH OF CONTRACT CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

In order to determine which state's statute of limitations applies, the Court must perform a choice-of-law analysis. To determine which state's choice-of-law rules apply, the Court considers the *Erie* doctrine. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938). "While classification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor," *Gasperini*, 518 U.S. at 427, the Supreme Court has concluded that choice-of-law rules are substantive, so federal courts must apply state choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Specifically, "[a] federal court exercising diversity jurisdiction over a claim applies the choice-of-law rules of the state in which it sits." *Frankentek Residential Sys., LLC v. Buerger*, 15 F. Supp. 3d 574, 580 (E.D. Pa. 2014) (citing *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 108-09 (1945)). If the case remains in this Court, the Court should apply the Pennsylvania choice of law rules to determine which statute of limitations applies to this case.

In a statute of limitations analysis, "Pennsylvania courts ordinarily apply the Pennsylvania statute of limitations." *Ross v. Johns-Manville Corp.*, 766 F.2d 823, 826 (3d Cir. 1985) (citing (*Freeman v. Lawton*, 46 A.2d 205, 207 (Pa. 1946)). However, Pennsylvania's "borrowing statute" provides one exception to this general rule. *Id.* at 826 n.3. Under the borrowing statute, "[t]he period of limitation applicable to a claim accruing outside [of Pennsylvania] shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, *whichever first bars the claim*." 42 PA. CONS. STAT. § 5521(b) (emphasis added). Therefore, if a claim accrues outside Pennsylvania, Pennsylvania courts apply either Pennsylvania's statute of limitations or the statute of limitations of the place where the claim accrued, whichever bars the claim earlier in time. *Id.* Although the Agreements stipulate to the application of Georgia law, such "choice of law provisions in contracts do not apply to statutes of limitations, unless the reference is express." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1991).

Under Pennsylvania law, the statute of limitations for breach of contract is four years, while Georgia provides a six-year limitations period on contract actions. 42 Pa. Cons. Stat. § 5524; OCGA § 9-3-24. Because Pennsylvania's statute of limitations would first bar Plaintiff's claim, it is the applicable limitations period.

Here, Plaintiff admits that the alleged breach by Defendants occurred more than four years before Plaintiff filed their claim. According to the Complaint, "Defendants breached the Agreements . . . by unilaterally and arbitrarily declaring the venture between Empire and Blacklick was no longer 'economically feasible.'" (Compl. ¶ 37.) Plaintiff judicially admits that Empire's declaration of the project as no longer "economically feasible" occurred in an email from Paul Kohler, which was attached to the Complaint as Exhibit H. (Compl. ¶ 25 & Ex. H). Exhibit H

7

shows that Mr. Kohler's email was received by Plaintiff on June 29, 2016, which is more than four years before Plaintiff filed its writ of summons on August 11, 2020.[1] As such, Plaintiff's claim for breach of contract is time barred and should be dismissed.

V. **PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM IS BARRED BY LIMITATIONS**

Regardless of whether the Court applies Pennsylvania or Georgia law, Plaintiff's claim for fraudulent inducement is time barred. Pennsylvania applies a two-year limitations period for fraud claims. 42 Pa. Cons. Stat. § 5524(7) ("The following actions and proceedings must be commenced within two years . . . [a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct . . . including deceit or fraud."). Georgia requires such actions to be brought within four years. *Kaylor v. Rome City Sch. Dist.*, 600 S.E.2d 723, 726 (Ga. App. 2004) ("A fraudulent inducement claim is governed by O.C.G.A. § 9-3-31, which imposes a four-year statute of limitation.").

The Complaint states that both Agreements were executed on February 1, 2012. (Compl. § 7). Therefore, any alleged misrepresentation upon which Plaintiff could have relied must have occurred before the execution date. In certain instances, the presence of fraud may toll limitations until discovery that the representation was false. *See Rothman v. Fillette*, 469 A.2d 543, 546 (Pa. 1983) ("fraud or deceit tolls the statute of limitations until such time as the fraud has been discovered by the exercise of due diligence"); *Gallant v. MacDowell*, 759 S.E.2d 818, 821 (Ga. 2014) ("where the defendant has engaged in fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation runs only from the plaintiff's discovery of such fraud."). However, the Complaint demonstrates that Plaintiff discovered the alleged fraud,

---

[1] Exhibit H also shows that Plaintiff's representative, Prasad Margabhandu, forwarded this email to Brad Sommer at Sommer Law Group, who presumably acted as counsel for Blacklick or Mr. Margabhandu. Thus Plaintiff cannot dispute that it was aware of the alleged breach more than four years before filing the instant lawsuit.

8

at the latest, on June 29, 2016 when it received the mail declaring the project economically infeasible. (Compl. Ex. H).

## VI. PLAINTIFF'S GOOD FAITH AND FAIR DEALING CLAIM FAILS

Under Georgia law, every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement. *WirelessMD v. Healthcare.com Corp.*, 271 Ga. App. 461, 468 (610 SE2d 352) (2005); *Hunting Aircraft v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 451 (636 SE2d 139) (2006). The implied covenant modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability. *Stuart Enterprises Intl. v. Peykan, Inc.*, 252 Ga. App. 231, 233-234 (555 SE2d 881) (2001); *WirelessMD*, 271 Ga. App. at 468. Because Georgia does not recognize an independent cause of action for breach of the implied duty, this claim must be dismissed.

## VII. EMPIRE COULD NOT HAVE FRAUDULENTLY INDUCED BLACKLICK INTO THE AGREEMENTS

Under Pennsylvania law, "[f]raud in the inducement is found where an opposing party made false representations that induced the complaining party to agree to the contract." *Batoff v. Charbonneau,* 130 F. Supp. 3d 957, 969 (E.D. Pa. 2015) *(*quoting *Toy v. Metro. Life Ins. Co*., 928 A.2d 186, 204-05 (Pa. 2007)). It is axiomatic that only the party who actually made the representation may be liable for a fraudulent inducement claim. *See e.g. Chetty Holdings, Inc. v. NorthMarq Capital, LLC*, No. 11-4640, 2012 U.S. Dist. LEXIS 60802, at *17 (E.D. Pa. May 1, 2012) (dismissing fraudulent inducement claim against underwriter when the alleged misrepresentation inducing Plaintiff to enter into an underwriting agreement was made by an employee of a consulting firm, which was affiliated with the underwriter); *Buckeye Ret. Co., LLC, Ltd. v. Lloyd*, 2005 Phila. Ct. Com. Pl. LEXIS 414, *5, 2005 WL 2267067 (dismissing fraudulent

9

inducement claim against assignee lender when the "fraud claims, as pled, relate[d] to the conduct of [the original lender], not [the assignee]").

Here, Blacklick has not, nor could it have, alleged any conduct by Empire which caused Blacklick to enter into the Agreements. Rather, the Complaint makes clear that Empire did not come onto the scene until more than two years *after* Blacklick and Mansfield executed the Marketing Agreement and Lease. (Compl. § 7 ("Agreements" executed on February 1, 2012) & Compl. ¶ 14 ("On or about September 14, 2014, Empire . . . acquired the retail dealer business of Mansfield and merged Mansfield's retail dealer operations into Empire")). Plaintiff has no basis to allege that it relied on any action by Empire when it executed the Agreements with Mansfield two years prior to Empire's alleged merger, as such Plaintiff's claim must be dismissed.

## VIII. THE COMPLAINT DOES NOT SATISFY THE HEIGHTENED PLEADING STANDARD OF RULE 9(B)

Where fraud is alleged as a predicate act, Rule 9(b) requires that the plaintiff allege the fraud with particularity. FED. R. CIV. P. 9(b). The particularity requirement can be satisfied through alleging the date, time, or place of the fraud, or by giving "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984); *see also Lum v. Bank of Am.,* 361 F.3d 217, 224 (3d Cir. 2004).

In order to survive a motion to dismiss a plaintiff must always allege who made the fraudulent representation, to whom the representation was made, and the general content of the misrepresentation. *Saporito v. Combustion Eng'g Inc.,* 843 F.2d 666, 675 (3d Cir. 1988). In other words, "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged."

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-224 (3d Cir. 2004)).

While Blacklick contends that it was fraudulently induced into executing the Agreements, Blacklick does not allege a single misrepresentation made by either Defendant which induced Blacklick to enter into the Agreements. Rather, the only pre-contractual activities identified in the Complaint are that "*Blacklick identified Mansfield* as a potential partner" and "*Blacklick* had a retail site analysis performed to demonstrate [to Mansfield] the property's commercial potential." (Compl. ¶ 6) (emphasis added).

Nowhere in the Complaint does Blacklick identify who made the representation, to whom it was made, or even the content of the alleged misrepresentation. *Cf., Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) ("Fed. R. Civ. P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements."). Instead, the Complaint makes no more than general averments of fraud which do not satisfy the heightened pleadings standard of Rule 9(b). For this reason, Plaintiff's fraudulent inducement claim must be dismissed.

IX. **PLAINTIFF'S FRAUD CLAIM IS BARRED BY THE GIST OF THE ACTION DOCTRINE**

The Third Circuit recognizes the so called "gist of the action" doctrine. *See Jones v. ABN AmroMortgage Grp., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010). This doctrine "precludes tort claims where the true gravamen, or gist, of the claim sounds in contract." *Dommel Properties LLC v. Jonestown Bank & Tr. Co.*, 626 F. App'x 361, 364 (3d Cir. 2015); *see also Clark Motor Co. v Manufacturers & Traders Tr. Co.*, 360 F. App'x 340, 347 (3d Cir. 2010). "Accordingly, the 'gist of the action' doctrine bars tort claims (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract

claim or the success of which is wholly dependent on the terms of a contract." *KBZ Communs. Inc. v. CBE Techs. LLC*, 634 F. App'x 908, 911 (3d Cir. 2015).

The doctrine is particularly applicable in a case such as the one at bar, in which the alleged misrepresentations complained of were later included in the contract. *See Hearbest, Inc. v. Adecco USA*, Civil Action No. 13-1026, 2014 U.S. Dist. LEXIS 173338, at *23 (W.D. Pa. Dec. 16, 2014) ("gist of the action doctrine will bar claims for fraud in the inducement where the false representations concerned duties later enshrined in the contract."). This court has applied the "gist of the action" doctrine to dismiss fraud claims which merely duplicate breach of contract actions. *See e.g.*, *Lombardi v. Allstate Ins. Co.*, No. 08-949, 2009 U.S. Dist. LEXIS 52951, at *28 (W.D. Pa. June 23, 2009). As another court in this district has explained, "claims for fraud in the inducement should only be permitted to go forward despite an existing contract when the alleged promises and representations deal with issues *that are external to the contract and its terms*." *Mazzo v. NRI Data & Bus. Prods.*, No. 05-CV-23, 2006 U.S. Dist. LEXIS 110254, at *15 (E.D. Pa. Oct. 20, 2006) (emphasis added).

According to Plaintiff's Complaint, the alleged misrepresentations were "embodied in the Agreements." Compl. ¶¶ 41, 42, 43 and 45. Indeed, in an attempt to plead the reliance element of its fraud claim, Plaintiff admits that it only "relied on the aforementioned representations and warranties made by Defendants *in the Agreements*." Compl. ¶ 44 (emphasis added). As pleaded, Plaintiff's fraudulent inducement claim is a classic example of a claim in which dismissal is appropriate under the "gist of the action" doctrine, and therefore, it should be dismissed.

X. **THE AGREEMENTS' INTEGRATION CLAUSES BAR PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM**

"Pennsylvania law prohibits recovery on a claim of fraud in the inducement where the contract represents a fully integrated written agreement." *Goldstein v. Murland*, Civil Action No.

02-247, 2002 U.S. Dist. LEXIS 11331, at *7 (E.D. Pa. June 24, 2002). Thus, when a contract contains an integration clause which states that the contract constitutes the entire agreement between the parties, dismissal of a fraudulent inducement claim in proper. *See Interwave Tech. Inc. v. Rockwell Automation, Inc*., No. 05-398, 2005 U.S. Dist. LEXIS 37980, at *51 (E.D. Pa. Dec. 30, 2005) ("Integration clauses and contract terms that specifically cover the subject matter of the alleged fraudulent inducement frequently result in dismissal of fraudulent inducement claims in the Third Circuit"); *see also Peerless Wall & Window Coverings, Inc. v. Synchronics, Inc.*, 85 F. Supp. 2d 519, 533 (W.D. Pa. 2000) (finding "that plaintiff's fraud claim, to the extent it is based upon affirmative misrepresentations, is barred by the integration clause as contrary to the express terms of the license agreement, in the same manner as the contract and warranty claims"); *Sunquest Info. Sys. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 656 (W.D. Pa. 1999); *Winters v. Inv. Sav. Plan for Employees of Knight-Ridder, Inc*., 174 F. Supp. 2d 259, 263 (E. D. Pa. 2001).

The Agreements at issue in this case contain valid and enforceable integration clauses. Compl. Ex. B, ¶ 39 & Ex. C, ¶ 23. In particular each provision provides that "this Agreement . . . constitutes the entire agreement between the parties and no representations, inducements, promises, or agreements, oral or otherwise, between the parties not embodied herein shall be of any force or effect." *Id*. Simply put, Plaintiff has no legal or factual basis for its fraudulent inducement claim, therefore it should be dismissed.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request the Court grant its motion and dismiss this action or transfer the action to the United States District Court for the Northern District of Georgia.

Date: February 5, 2021	Respectfully submitted,

   *s/ John P. Miller*
John P. Miller
  PA ID No. 91304
  jmiller@dfllegal.com
Haig M. Sakoian
  PA ID No. 206032
  hsakoian@dfllegal.com
**Dingess, Foster, Luciana, Davidson &**
  **Chleboski LLP**
20 Stanwix St., Third Fl.
Pittsburgh, PA 15222
Phone: 412-926-1800
Fax: 412-926-1801

Kendal B. Reed (*pro hac vice* pending)
  TX ID No. 24048755
  kreed@condontobin.com
**Condon Tobin Sladek Thornton**
**Nerenberg, PLLC**
8080 Park Lane, Suite 700
Dallas, TX 75321
Phone: 214-265-3800
Fax: 214-691-6311

*Counsel for Empire Petroleum Partners, LLC*